

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**
**ATTORNEY GENERAL**


Honorable George W. Cox, M. D.
State Health Officer
Texas State Board of Health
Austin 2, Texas

Opinion No. O-6870

> Re: Whether discharge of partially
> treated sewage from Mitchell
> Lake into the Medina River vio-
> lates the anti-pollution statutes
> of Texas

Dear Sir:

Your request has been received by this Department and reads, in part, as follows:

"At the present time the San Antonio sewage treatment plant, largely as a result of increase in population during the War is not of sufficient capacity to completely treat all sewage received from the sewer collection system. While a large portion is completely treated with the production of a good effluent, discharged directly to the San Antonio River, the remainder receives only partial treatment after which it is discharged to a holding reservoir known as Mitchell Lake.

"Considerable improvement in the partially treated sewage stability and biochemical oxygen demand as well as concentration of bacteria occurs in Mitchell Lake through the natural processes of re-aeration and oxygen absorption. The organic matter, however, provides an excellent medium for the growth of algae which results in the production of a green color. The capacity of Mitchell Lake is limited and since the rate of evaporation does not equal the rate of inflow, it is necessary that the contents be periodically discharged to the Medina River. Through an agreement with downstream riparian owners, according to San Antonio officials, the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

water from Mitchell Lake is not permitted to enter the Medina River except during periods of flooding on the river watershed. As we understand it, the principal objection to Mitchell Lake water is the green color mentioned above.

"San Antonio officials are aware of the limited capacity of their sewage treatment facilities and plans are now underway for the construction of needed improvements; however, considerable time will be involved in carrying this improvement program to completion. Lately, San Antonio officials have informed us that due to the absence of heavy rains in the Medina River watershed for a long period of time an emergency situation has arisen whereby the water level in Mitchell Lake is very near the over-flowing point. It is feared that without the discharge of some water from the lake, damage to the dam and dikes will result with the possibility of a complete break which would cause the flooding of the country side in the vicinity as well as result in objectionable quantities of Mitchell Lake water entering the Medina River.

"It is the desire of the city of San Antonio, in order to avoid this danger, to permit the gradual discharge of water from Mitchell Lake to the Medina River in just sufficient quantities to maintain the lake level at a safe point. They have accordingly requested permission from this Department to follow such a procedure.

"We should like, therefore, to have an opinion from your office as to whether carrying out the proposal made by the city can be authorized under the existing anti-stream pollution statutes."

We invite to your attention the pertinent provisions of the statutes of Texas relating to the subject of your inquiry. Article 4444, Revised Civil Statutes of Texas, reads, in part, as follows:

"No person, firm or corporation, private or municipal, shall pollute any water course or other public body of water, by throwing, casting or depositing or causing to be thrown, cast or deposited any crude petroleum, oil or other like substance therein, or pollute any water course, or other public body of water from which water is taken for the

uses of farm livestock, drinking and domestic purposes, in this State, by the discharge, directly or indirectly, of any sewage or unclean water or unclean or polluting matter or thing therein, or in such proximity thereto that it will probably reach and pollute the waters of such water course or other public body of water from which water is taken, for said uses. Drain ditches, where waste oil finds its way into water courses or public bodies of water, shall be equipped with traps of sufficient capacity to arrest the flow of oil. In so far as concerns the protection of fish and oysters, the Game, Fish and Oyster Commissioner or his deputies, may have jurisdiction in the enforcement hereof. * * * * The State Board of Health shall enforce the provisions of this article. * * * *"
(Emphasis added)

Article 698b, Vernon's Annotated Penal Code, reads, in part, as follows:

"Section 1. It shall be unlawful for any person, firm, corporation, association, town, city or other political subdivision of this State, or any agent, officer, employee or representative of any person, firm, corporation, association, town, city or other political subdivision of this State to pollute any public body of surface water of this State.

"Sec. 2. 'Pollute' is hereby defined to be the throwing, discharging or otherwise permitting to reach or to be introduced into any public body of surface water of this State any substance, material or thing in such quantity that the said water is thereby rendered unfit for one or more of the beneficial uses for which such water was fit or suitable prior to the introduction of such substance, material or thing, or is thereby rendered harmful to public health, game birds or game animals, fish or other edible aquatic animals, or endangers any wharf, or endangers or hinders the operation of any boat, or renders insanitary or unclean any bathing beach.

"Sec. 3. The term 'public body of surface water of this State' shall include all surface creeks, rivers, streams, bayous, lagoons, lakes and bodies of surface waters that are fed by a stream or are subject to overflow from or into a stream which are the property of the State of Texas or any subdivision thereof,

and all portions of the Gulf of Mexico within the gulfward boundary of the State of Texas and all inland waters of the State of Texas in which the tide ebbs and flows."

The above quoted statutes clearly and unambiguously declare illegal certain acts deemed to "pollute" a public body of surface water in this State, and we assume from the facts as stated in your request that the discharge of the partially treated sewage from Mitchell Lake into the waters of the Medina River may "pollute" the waters of said river in contravention to the statutes.

The enforcement of the statutes, supra, is the only function which is therein delegated to, and lies within the purview of the designated Boards or Commissions. In support of this proposition we invite to your attention Section 67, Volume 37, page 433, of Texas Jurisprudence, and the authorities cited therein. Said Section reading as follows:

"Sec. 67. Public officers and governmental and administrative Boards possess only such powers as are expressly conferred upon them by law or are necessarily implied from the powers so conferred."

In conformity with this general statement of the law, there appears in Article 4418d, Vernon's Annotated Civil Statutes, the following language:

"* * * He (State Health Officer) shall have the power with the approval of the State Board of Health, to pursue and promulgate such administrative rules and regulations, not inconsistent with any law of the State, as may be deemed necessary for the effective performance of the duties imposed by this or any other law upon the State Department of Health and its several officers and divisions." (Emphasis added).

The emphasized portion of the above statute when applied to the instant facts clearly manifests the Legislature's intent to prohibit the State Board of Health's pursuing or promulgating administrative regulations inconsistent with the existing anti-pollution statutes.

It follows from the above cited authorities that irrespective of emergencies or impending dangers the Boards

Honorable George W. Cox - Page 5


or Commissions designated by the statutes, are confined to those powers expressly delegated to them by the Legislature and to license and act contrary to those delegated powers will be unlawful.

We trust the above satisfactorily answers your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By  /s/ Bob D. Maddox
        Assistant

Approved Mar 19, 1946
Grover Sellers
Attorney General of Texas

BDM:jt;djm

Approved:  Opinion Committee
By:___BWB___
        Chairman